## JOHN STEWART *v*. COMMONWEALTH.

**Criminal Law—Homicide—Indictment.**

> An indictment is good which charges that the defendant "did willfully, feloniously, and of his own malice aforethought, kill and murder his mother, Mrs. Stewart, by hitting her with a rock."

**Instructions.**

> In a criminal case the trial court should withhold instructions upon matters relating to the credibility of witnesses and the weight of evidence, or the rules by which the jury should be governed in passing upon either.

### APPEAL FROM CARTER CRIMINAL COURT.

December 20, 1877.

OPINION BY JUDGE COFER:

The indictment against the appellant not only contained the technical words commonly used to describe the crime of murder, but it also contained a statement of the particular facts necessary to show the manner in which the crime was committed and the means of its perpetration, and the case is therefore not analogous to the case of *White v. Commonwealth,* 9 Bush 178.

The statement is that the appellant "did wilfully, feloniously, and of his own malice aforethought, kill and murder his mother, Mrs. Stewart, by hitting her with a rock," etc. This is as sufficient as to allege, as is the common form where the homicide is committed with a knife, that the accused committed the alleged murder by stabbing the deceased with a knife.

Nor was there any variance between the indictment and the proof. That the evidence conduced to prove, or even if it conclusively proved, that appellant threw the stone at James and had no intention to strike or harm his mother, yet if his act of throwing at James was unlawful the law transfers the intent with which he threw at James to his mother, and treats him just as it would have done if he had killed James.

Instructions 7 and 8 were calculated to prejudice the substantial

rights of the appellant. In number seven the jury were told that they were the judges of the credibility of the witnesses and the weight of the evidence, and in determining these questions they should take into consideration the demeanor of witnesses on the witness stand, their intelligence or want of intelligence, the relation to or interest in the prosecution or defense, the opportunities or want of opportunities of knowing the facts about which they testified, and that by these tests, and from all the facts and circumstances allowed to go in evidence, they should give to the evidence such weight as they might believe it entitled to.

There was an attempt on the part of the commonwealth to prove by the only witness introduced by the appellant that he and she were engaged to marry, and she having denied it the commonwealth was permitted to prove that she had said they were engaged, and this evidence and the instruction were calculated to impair the weight of her testimony, which was favorable to the appellant. That part of the instruction in which the jury were told they should consider the relation to or interest of the witnesses in the prosecution or defense was particularly calculated to impair the weight of the testimony of the appellant's witness, and especially so in view of the illegal testimony elicited from Mrs. Tiller that the witness had stated to her that she was engaged to be married to the prisoner.

The jury may also have been misled by being told that they were the judges of the weight of the evidence and were to give it such weight as they thought it entitled to, and especially so in view of the refusal of the court to say to them as asked by the appellant's counsel that they could not convict him on a preponderance of the evidence.

In instruction number eight the jury were told they might disregard the entire testimony of any witness who had knowingly testified falsely to any material fact in the case, but if such witness was corroborated in any of his or her statements by other facts or circumstances proven in the cause, then, as to such statements as may be so corroborated, the jury should give such weight as from all the facts and circumstances allowed to go in the evidence they might believe it entitled to.

This was a virtual elimination of all the testimony of any witness the jury might believe had made a wilfully false statement to observe material facts, except so far as such witness might be corroborated. The jury would very naturally have inferred that as the court had told them that they might give to the corroborated statements of such a witness such weight as they thought it entitled to, the

court meant that they were not at liberty to give the uncorroborated statements of the witness any weight whatever, although they might regard such statements as entitled to be considered. ·

It may well be doubted whether it was not improper to give an instruction on the points embraced in either of these instructions (7 and 8).

This court in one case refused to reverse because the court had given an instruction embracing the idea that the jury may disregard the whole evidence of a witness who has wilfully made a false statement in regard to a fact in the case. But while such was the ruling in that case we think it safer and a better practice to withhold instructions upon matters relating to the credibility of witnesses and the weight of evidence, or the rules by which the jury should be governed in passing upon either.

Judgment *reversed* and cause remanded for a new trial upon principles not inconsistent with this opinion.

*Moss, for appellee.*